UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 99-10098-RGS

UNITED STATES

v.

STEPHEN ROSSETTI

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR COLLATERAL RELIEF

August 7, 2018

STEARNS, D.J.

Petitioner Stephen Rossetti seeks habeas corpus relief pursuant to 28 U.S.C. § 2255, contending that his sentence as an armed career criminal is constitutionally vulnerable in light of subsequent Supreme Court decisions, namely *Johnson v. United States (Johnson II)*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). The court will grant the petition and order resentencing.

BACKGROUND AND PROCEDURAL HISTORY

In 2001, Rossetti was convicted after a jury trial of conspiracy and attempt to affect commerce by robbery in violation of 18 U.S.C. § 1951 (the Hobbs Act), two counts of carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1), and two counts of being a felon in

possession of firearms, ammunition, and a hand grenade in violation of 18 U.S.C. § 922(g)(1). The predicate felony for the "crime of violence" enhancement under § 924(c)(1) was a conspiracy to obstruct, delay and affect commerce by robbery (Hobbs Act conspiracy).

The underlying facts, briefly, were these. Rossetti and three other co-conspirators planned to rob a Loomis Fargo armored car depot in Easton, Massachusetts. Unbeknownst to Rossetti, a member of his crew, who purportedly had an inside connection at the depot[1] who would help facilitate the robbery, was in fact an FBI informant who surreptitiously recorded various conversations among the conspirators, including a pre-robbery planning meeting at a diner in Dorchester. In these conversations, Rossetti shared detailed advice about how best to carry out the robbery, including how to don masks without pulling out hair that could be used to identify the wearer, how to subdue and tie up the guards, and how to remove the depot's video surveillance tapes without making the robbery seem like an inside job. More damning, Rossetti also provided guns, walkie-talkies, police scanners, body armor, and a live fragmentation grenade for use in the robbery. He and

---

[1] The supposed "insider" was a figment of the informant's imagination.

one of his co-conspirators, David Turner[2], were arrested by the FBI the morning that the robbery was to take place.

Following Rossetti's conviction, his Presentence Report concluded that he was an armed career criminal as defined in 18 U.S.C. § 924(e)(1), citing the following prior convictions: (1) Massachusetts breaking and entering (B&E) in the nighttime (B&E nighttime) in 1977; (2) attempted B&E in 1979; and (3) federal armed robbery in 1983. The court sentenced Rossetti to a total of 622 months (51 years and ten months) in prison as follows: 240 months for the Hobbs Act conspiracy and the attempt to rob, 262 months on the felon in possession charges (to be served concurrently with the Hobbs Act sentence), and 360 months on the 924(c) counts, to be served consecutive to the other sentences (as required by statute). That sentence was vacated by the First Circuit in light of *United States v. Booker*, 543 U.S. 220 (2005), but this court reimposed the same sentence on remand. *See* Dkt # 540.

---

[2] Turner also filed a Motion to Vacate under § 2255. The court initially denied Turner's Motion on May 20, 2009, see Dkt # 562, but subsequent to *Johnson II* Turner sought permission in the Court of Appeals to file a second and successive petition. That petition was stayed for *Dimaya* and is still pending. Lacking jurisdiction to review Turner's petition while the First Circuit is still considering whether to permit him to file a second and successive petition, I express no views on how Rossetti's case bears on Turner's efforts to obtain post-conviction relief.

On June 8, 2016, the First Circuit granted Rossetti's motion to file a second and successive petition in light of *Johnson II*, concluding that Rossetti's challenge to his armed-career-criminal designation relied on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Rossetti's instant motion followed. Shortly thereafter, the Supreme Court granted certiorari in *Lynch v. Dimaya*, which raised a question of whether the residual clause of 18 U.S.C. § 16(b) – identical in wording to the language in § 924(c)(3)(B) – was unconstitutionally vague in light of *Johnson II*. Because the answer to that question was likely to prove dispositive in resolving Rossetti's petition, the court granted a joint request to stay further proceedings pending the Supreme Court's decision in *Dimaya* (by then styled *Sessions v. Dimaya*). *See* Dkt ## 741, 742.

The *Dimaya* decision in hand, *see* 138 S. Ct. 1204 (2018), the court requested the parties to file supplemental memoranda on its effect on Rossetti's petition. They did and the matter is now ripe for review.

## DISCUSSION

The present motion need not detain the reader for long. The Supreme Court in *Dimaya* taught that "*Johnson* tells us how to resolve this case," *Dimaya,* 138 S. Ct. at 1223, concluding that the same "[t]wo features" that

4

"conspire[d] to make" the ACCA's residual clause unconstitutionally vague – "the ordinary case requirement and an ill-defined risk threshold" – also operated to make §16(b) unconstitutionally void. *Dimaya* thus applies directly to Rossetti's case: because the language in the residual clauses of § 16(b) and § 924(c) is identical, *Dimaya*'s reasoning dooms the residual clause of § 924(c).

In a case decided before *Dimaya*, I had reached the opposite conclusion, believing that § 924(c)'s residual clause could be fairly distinguished from the ACCA's residual clause. *See United States v. Correia*, 2017 WL 80245 (D. Mass. 2017).³ However, in light of the plain language in *Dimaya*, that conclusion is no longer tenable, and at least one Circuit Court of Appeals has already so found. *See United States v. Salas*, 889 F.3d 681, 685 (10th Cir. 2018) (noting that "[o]ther circuits have upheld § 924(c)(3)(B)'s constitutionality, but they were not faced, as we are here, with binding authority holding § 16(b) unconstitutional"); *see also id.* at 687 (holding that "the reasons why §16(b) is unconstitutionally vague apply equally to § 924(c)(3)(B)").

---

³ Correia's case is currently pending review in the First Circuit in light of *Dimaya* and this court therefore lacks jurisdiction to reconsider its previous ruling.

More to the point, the Supreme Court in *Dimaya* rejected the structural and linguistic differences between § 924(e) and §16(b) on which I had relied in upholding the constitutionality § 924(c): namely, that unlike the ACCA, § 924(c) did not contain a grab bag list of disparate exemplar offenses; that it was temporally limited to force used "in the course of committing the offense," whereas the ACCA's residual clause had no such limiting language; and that it was narrower in scope than its ACCA counterpart because § 924(c) focused solely on whether there was a substantial risk that physical force would be used, whereas the ACCA's residual clause required courts to inquire about the risk of actual "physical injury" to a victim. These three considerations were explicitly rejected by the Supreme Court in *Dimaya* with respect to § 16(b).

In something of a volte-face, the government now suggests that the concern should be with a defendant's actual conduct, rather than using a categorical approach to assess the risk imposed by the "ordinary case" of the predicate crime. The government's position until recently has been that § 924(c)(3)(B) requires a categorical approach – a conclusion that, as I noted in *Correia*, the First Circuit has never definitively held but that the lower district courts had regularly assumed to be the case.

I had previously observed in *Correia* that there is an intuitive appeal to a conduct-specific approach in residual clause cases because "[u]nlike the ACCA's residual clause, which examines past convictions to enhance a sentence, § 924(c) determinations are bound up with the circumstances of the defendant's conviction." *Correia*, 2017 WL 80245, at *2 n. 1. In a real-life context it is far easier to gauge whether a defendant's specific crime "by its nature, involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). In this instance a conspiracy to rob an armored car depot undertaken with a fragmentation grenade, firearms, and body armor would likely strike the average person as a crime that "by its nature" involved a substantial risk that the use of physical force was well within the contemplation (and the means) of the conspirators.[4]

Nevertheless, application of the conduct-specific approach is precluded by *Dimaya*, which went after the identically-worded residual clause in § 16(b) using the categorical approach. *See Dimaya*, 138 S. Ct. at 1211. Justice Kagan's separate opinion for herself and three other Justices in *Dimaya* also noted that the government in that case had not argued for the

---

[4] To paraphrase Samuel Clemens, as judges we can be depended on "to take any reasonably good law and interpret the common sense all out of it." Mark Twain, Unmailed Letter to H.C. Christiancy, December 18, 1887.

7

conduct-specific approach, in part because to do so would "ping-pong" the court from one constitutional problem to another under the Sixth Amendment. *See id.* at 1217 (Opinion of Kagan, J.,); *see also Descamps v. United States*, 570 U.S. 254, 269 (2013) ("We have held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'") (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000)).

Although courts are counseled to interpret statutes whenever possible to avoid constitutional problems, *see Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring), as the Supreme Court has recently cautioned, the constitutional avoidance canon is not a license for a court to "adopt implausible constructions" of a statute or to otherwise "rewrite it." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). Here, the best (and only plausible) reading of the Supreme Court's decision in *Dimaya* is one that requires application of the categorical approach to § 924(c)'s residual clause, as several Courts of Appeals have already found. *See, e.g., United States v. Butler*, 496 Fed. App'x 158, 161-162 (3d Cir. 2012); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015); *United States v.*

*Prickett*, 839 F.3d 697, 698 (8th Cir. 2016). This court therefore finds that § 924(c)(3)(B) is unconstitutionally vague.

The court also agrees with Rossetti that his conviction for Hobbs Act conspiracy is not a crime of violence under 18 U.S.C. § (c)(3)(A) (the force clause). The Hobbs Act, 18 U.S.C. § 1951, provides that: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so . . . shall be fined under this title or imprisoned for more than twenty years, or both." Unlike the general conspiracy statute, 18 U.S.C. § 371, a Hobbs Act conspiracy does not require the commission of any overt act, *see United States v. Monserrate-Valentin*, 729 F.3d 31, 46 (1st Cir. 2013), but only requires an agreement by a defendant to obtain property by robbery. There is no required element of a use, attempted use, or threatened use of physical force, to complete the crime. As a result, numerous courts have rejected the argument that a Hobbs Act conspiracy satisfies § 924(c)'s force clause requirements, *see, e.g., Verleff v. United States*, 307 F. Supp. 3d 891 (N.D. Ill. 2018); *United States v. Hernandez*, 228 F. Supp. 3d. 128, 138-139 (D. Me. 2017), and this court, albeit reluctantly, joins them today.

ORDER

For the foregoing reasons, Rossetti's petition for collateral relief is GRANTED.[5]

        SO ORDERED.

        /s/ Richard G. Stearns
        _____
        UNITED STATES DISTRICT JUDGE

---

[5] The government also argues that Rossetti fails to satisfy the § 2255 gatekeeping requirements for collateral review and that his claim is untimely. However, the court finds it clear that *Johnson II* and *Dimaya* do apply to § 924(c)(3)(B), and therefore his second or successive petition rests on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Rossetti's claim was filed within one year of *Johnson II* and was stayed with the parties' joint consent and the court's permission pending *Dimaya*. His claim is therefore timely under §2255(f)(3).